IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| ALAN ARKIN, on behalf of himself and all others similarly situated, | Case No. |
|---|---|
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| DOORDASH, INC., | |
| Defendant | |

## CLASS ACTION COMPLAINT

**1.** Plaintiff, Alan Arkin, individually and on behalf of all others similarly situated, brings this class action against defendant DoorDash for violation of the New York General Business Law, § 349 and the other states' consumer protection statutes, common law fraud and unjust enrichment. Defendant DoorDash has engaged in unlawful and deceptive acts, practices and misconduct by misleading Plaintiff and the consuming public to believe that the tip amount entered on the DoorDash app would be received as a tip by the DoorDash delivery workers for their service. DoorDash knew, and failed to disclose, that the tip amount entered by Plaintiff and other consumers on the app was received by DoorDash, in whole or in part, and used to subsidize its cost of doing business. Had Plaintiff and other customers known that by entering a tip on the DoorDash app they were simply contributing to DoorDash's bottom line, they never would have agreed to pay a tip using the DoorDash app.

## THE PARTIES

2. Plaintiff Alan Arkin resides in Brooklyn, New York. Plaintiff has made approximately 38 purchases with the DoorDash app and has customarily paid a tip for delivery via the DoorDash app.

3. Defendant DoorDash, Inc. ("DoorDash") is a technology company based in San Francisco, California which specializes in on-demand food delivery service and operates the nation's largest on-demand food-delivery app. DoorDash's 400,000 food app delivery workers are known as "Dashers."

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of Title 28 of the United States Code).

5. Plaintiff is a citizen of a different state than Defendant. Plaintiff is a citizen and resident of New York. Defendant DoorDash is a citizen of California. The amount in controversy exceeds $5,000,000 and there are at least one hundred members of the Class.

6. This Court has jurisdiction over Defendant because it is a foreign corporation authorized to conduct business in New York, is regularly doing or did business in New York during the relevant time period and has registered with the New York Secretary of State, or does sufficient business in New York, has sufficient minimum contacts with New York, or otherwise intentionally avails itself of the New York consumer markets. This purposeful availment renders the exercise of jurisdiction by this Court over Defendant and its affiliated or related entities permissible under traditional notions of fair play and substantial justice.

7. This Court has subject-matter jurisdiction under CAFA because the amount in controversy exceeds $5 million and diversity exists between Plaintiff and the Defendant. 28 U.S.C. § 1332(d)(2). Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the Class members are aggregated. 28 U.S.C. § 1332(d)(6).

8. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Plaintiff resides within this District, Defendant transacts business and may be found in this District and a substantial portion of the practices complained of herein occurred in this District.

9. All conditions precedent to this action have occurred, been performed, or have been waived.

## STATEMENT OF FACTS

10. On July 21, 2019, the New York Times published an article entitled, "What Our Reporter Learned Delivering Burritos to New Yorkers" in which Andy Newman, a reporter for the Metro section of the New York Times, worked as a food app delivery worker for DoorDash.

11. The reporter stated that for almost two-thirds of his food deliveries, he received no tip. The article explained that the DoorDash app "effectively pockets tips made via the app" and that in order for the delivery worker to ensure that s/he received a tip, it had to be paid in cash by the customer. The article stated that, "You may think the delivery fee takes care of the [delivery] rider, but the apps' pay structure leaves riders dependent on [cash] tips to make a living wage."

12. Indeed, under a policy which DoorDash adopted in 2017, DoorDash would offer a delivery worker a guaranteed minimum amount to do a delivery. If a customer tipped, in most cases a tip paid through the app would go to subsidizing DoorDash's contribution toward the

3

guarantee, rather than increasing the deliver worker's pay. In other words, the tip entered by the customer was simply subsidizing DoorDash's labor costs and was not rewarding the delivery worker for his or her service.

13. For example, as the New York Times explained in an article entitled "DoorDash Changes Tipping Model After Uproar" published July 24, 2019:

> [I]f DoorDash guaranteed a worker $7 for a delivery and a customer did not tip, DoorDash would directly pay the worker $7. If the customer tipped $3 via the app, DoorDash would directly pay the worker only $4, then add on the $3 tip so that the worker would still get only $7.

14. Thus, using the example above, the customer who enters an additional amount for a tip is overpaying for the delivery service. For example, if the food delivery bill is $10 and the customer enters a tip on the app of $3, the food costs $10, the customer pays $13, and the delivery worker is paid $7. If the food delivery bill is $10, and the customer enters no tip on the app, the customer pays $10 and the delivery worker is paid $7.

15. On July 24, 2019, DoorDash represented that it would discontinue its "widely criticized tipping policy that effectively meant customers' tips were going to DoorDash rather than the worker who delivered their meal."

16. DoorDash has admitted that the tip amount entered by the customer on the DoorDash app was largely subsidizing its labor costs, rather than rewarding the delivery worker with extra pay for good service. DoorDash's chief executive, Tony Xu, wrote on Twitter on July 23, 2019, that "we're changing our model- the new model will ensure that Dashers' [delivery workers'] earnings will increase by the exact amount a customer tips on every order."

17. Commenting on DoorDash's tipping policy, tech journalist Louise Matsakis wrote "I don't believe a single person intends to give a tip to a multibillion dollar venture-backed start-

up. . . . They are trying to tip the person who delivered their order. This deceptive model should be illegal."

18. Plaintiff has made approximately 38 purchases using the DoorDash app and has entered a tip for the delivery via the DoorDash app on each purchase. Had Plaintiff known that the exact tip entered on the DoorDash app was not being received by the Dasher as a wage enhancement for good service, and instead was being paid, in whole or in part, to DoorDash to offset its labor costs, Plaintiff would not have agreed to enter and pay a tip amount on the DoorDash app.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure, Rule 23(a), 23(b)(2) and (b)(3) on behalf of a Class defined as follows:

> All consumers who used DoorDash and paid a tip through the Door Dash app within the statutory period.

20. Plaintiff reserves the right to modify or amend the definition of the Class before the Court determines whether certification is appropriate.

21. Defendant subjected Plaintiff and Class members to the same or substantially similar unfair, unlawful, and deceptive practices and harmed them in the same manner.

**Numerosity**

22. The proposed Class is so numerous that joinder of all members would be impracticable. As of 2018, DoorDash was active in 3,000 cities nationwide and had captured more than 20% of all monthly online food deliveries with over 245,000 active mobile app users. The individual Class members are ascertainable, as the names and addresses of all class members can be identified in the business records maintained by Defendant. The precise number of Class members can be obtained through discovery, but the numbers are clearly more than can be

consolidated in one complaint such that it would be impractical for each member to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

**Commonality**

23. There are questions of law and fact that are common to Plaintiff's and Class members' claims.

24. These common questions predominate over any questions that go particularly to any individual member of the Class. Among such common questions of law and fact are the following:

    a. whether Defendant misrepresented and failed to disclose the tip amount entered by the customer on the DoorDash app was not enhancing the Dasher's pay or rewarding the Dasher for good service, but was contributing to DoorDash's profits

    b. whether Defendant has been unjustly enriched;

    c. whether Plaintiff and the Class have suffered damages as a result of Defendant's actions and the amount thereof; and

    d. The appropriate remedies to be imposed on Defendant for its violations of the laws claimed herein;

**Typicality**

25. Plaintiff is a member of the Class he seeks to represent. Plaintiff's claims are typical of claims of the other class members because of the similarity, uniformity, and common purpose of the Defendant's unlawful conduct. Each Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendant's unlawful conduct.

**Adequacy of Representation**

26. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent him. There is no hostility between Plaintiff and the unnamed Class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

27. To prosecute this case, Plaintiff has chosen the undersigned law firms, who are experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**Requirements of Fed. R. Civ. P. 23(b)(3)**

28. The questions of law or fact common to Plaintiff and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiff and the unnamed class members are based on Defendant's materially false and misleading statements and omissions which lead reasonable consumers who use the DoorDash app to believe that the tip amount they entered on the DoorDash app would go to the delivery worker as a wage enhancement for good service, and not to DoorDash as a labor cost subsidy.

29. Common issues predominate when, as here, liability can be determined on a class-wide basis, even though some individualized damages determinations may be necessary.

30. As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the Class as is the case at bar, common questions will be held to predominate over individual questions.

**Superiority**

31.  A class action is superior to individual actions.

32.  Joinder of all Class members would create extreme hardship and inconvenience for the affected borrowers as they are dispersed geographically and reside across multiple states.

33.  Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions.

34.  There are no known individual Class members who are interested in individually controlling the prosecution of separate actions.

35.  The interests of justice will be well served by resolving the common disputes of potential Class members in one forum. Individual suits would not be cost effective or economically maintainable, and the action is manageable as a class action.

**Requirements of Fed. R. Civ. P. 23(b)(2)**

36.  Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the class.

37.  Defendant has acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

# FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

38. Plaintiff repeats and realleges each preceding paragraph of the Complaint as if fully set forth herein.

39. Plaintiff brings this cause of action individually and on behalf of a New York Subclass against Defendant.

40. Plaintiff and the Class members are "persons" within the meaning of GBL §349(h).

41. GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

42. Defendant's acts and practices alleged herein constitute acts, uses, or employment of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of merchandise, and with the subsequent performance, of defendant in violation of § 349 of New York's General Business Law, making deceptive and unfair acts and practices illegal.

43. Defendant's conduct is deceptive because it is likely to mislead consumers and the public by making them believe, falsely, that the tip amount which the consumer enters into the DoorDash app would go to the Dasher as a wage enhancement for good service. Defendant's representations and omissions were materially false and misleading and likely to deceive the consuming public because Defendant knew and failed to disclose that all or part of the tip amount entered into the DoorDash app would go to DoorDash to subsidize its cost of business and would not reward the Dasher for good service.

44. The deceptive acts and practices of Defendant have directly, foreseeably, and proximately caused damages and injury to Plaintiff and the other members of the New York Subclass. Indeed, Defendant's false and deceptive representations caused Plaintiff and other members of the New York Subclass to suffer damages, including, but not limited to, paying additional amounts via the DoorDash app which they believed to be tips for the Dashers which Plaintiff and other members of the Subclass would not have paid had they known that the Dashers received a flat fee per delivery, regardless of whether the customer paid a tip, and that tip amounts entered on the app were pocketed by DoorDash, in whole or in part, and used to subsidize its cost of doing business.

45. In addition to pecuniary losses, Plaintiff and the Subclass suffered actual harm as a result of Defendant's violations GBL §349(a), including but not limited to, the annoyance, harassment, time, frustration, and anger due to Defendant's violations of GBL §349.

46. Plaintiff and the New York Subclass are entitled to pursue claims against Defendant for damages, statutory damages, treble damages, exemplary damages, injunctive relief, costs and attorney's fees pursuant to GBL §349(h) to redress Defendant's violations of GBL §349(a).

47. New York Subclass members who were sixty-five years of age or older at the time of Defendant's violations of GBL §349 are entitled to pursue additional remedies pursuant to GBL §349-c to redress Defendant's violations of GBL §349(a) perpetrated against elderly persons.

48. Plaintiff has no adequate remedy of law.

# SECOND CAUSE OF ACTION
## VIOLATIONS OF CONSUMER PROTECTION LAWS
## OF STATES ADDITIONAL TO NEW YORK

49. Plaintiff repeats and realleges each preceding paragraph of the Complaint as if fully set forth herein.

50. In the event that the New York GBL § 349 does not provide redress to Plaintiff's and/or other Class members' claims against Defendant, the following alternative consumer protection statutes provide a basis for redress based on Defendant's unfair, deceptive, and/or misleading acts, practices and conduct in misrepresenting and misleading the consumer to believe that the exact tip amount entered by the consumer on the DoorDash app would go to the Dasher as a wage enhancement for good service and failing to disclose that all or part of the tip amount was pocketed by DoorDash to subsidize its labor costs and that the amount received by the Dasher would be the same whether or not the customer paid a tip:

(a). The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska State. §§ 45.50.471 *et seq*.;

(b). The Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, et seq.;

(c). The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq*.;

(d). The California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. and/or the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.;

(e). The Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, *et seq*.;

(f). The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq*.;

(g). The Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §§2511 et seq. and/or the Delaware Uniform Deceptive Trade Practices Act, Del. Code Ann. tit. 6, §2531, *et seq*.;

(h). The District of Columbia Consumer Protection Procedures Act, D.C. Code Ann. §28-3901, *et seq.*;

(i). The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, *et seq.*;

(j). The Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 10-1-370, *et seq.*;

(k). The Hawaii Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §§ 481A-1, *et seq.* and/or Hawaii Rev. Stat. §§ 480-1, *et seq.*;

(l). The Idaho Consumer Protection Act, Idaho Code §§ 48-601, *et seq.*;

(m). The Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Comp. Stat. Ann. §§ 505/1 *et seq.*;

(n). The Indiana Deceptive Consumer Sales Act, Ind. Code Ann. §§ 24-5-0.5-1, *et seq.*;

(o). The Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623, *et seq.*;

(p). The Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.110, *et seq*;

(q). The Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, §§ 205A, *et seq.*;

(r). The Maryland Consumer Protection Act, Md. Com. Law. Code Ann. §§ 13-101, *et seq.*;

(s). The Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A;

(t). The Michigan Consumer Protection Act, Mich. Comp. Laws Ann §§ 445-901, *et seq.*;

(u). The Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. §§ 325F.68, *et seq.*;

(v). The Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.*;

(w). The Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et seq.*;

(x). The Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903 *et seq*. and/or Nevada Rev. Stat. §41.600;

(y). The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann., §§ 358-A:1, *et seq.*;

(z). The New Mexico Unfair Practices Act, N.M. Stat. Ann., §§ 57-12-1, *et seq.*;

(aa). The New York General Business Law §349, *et seq.*;

(bb). North Carolina, N.C. Gen. Stat. §§ 75-1.1, *et seq.*;

(cc). North Dakota, N.D. Gen. Stat. §§ 51-15-01, *et seq.*;

(dd). The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.01, *et seq.*;

(ee). The Oklahoma Consumer Protection Act, Okla. Stat. Ann. tit. 15, §§ 751, *et seq.*;

(ff). The Oregon Unlawful Trade Practices Law, Or. Rev. Stat., §§ 646-605 *et seq.*;

(gg). The Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, §§ 201-1, *et seq.*;

(hh). The Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Law §§ 6-13.1-1, *et seq.*;

(ii). The South Dakota Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws Ann. §§ 37-24-1, *et seq.*;

(jj). The Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.*;

(kk). The Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.*;

(ll). The Washington Consumer Protection Act, RCW 19.86.020 *et seq.*

(mm). West Virginia, W.Va. Code §§ 46A-6-101, *et seq.*;

(nn). Wisconsin, Wisc. Stat. Ann. §100.18; and

(oo). The Wyoming Consumer Protection Act, Wyo. Stat. §40-12-101, *et seq*.

51. Plaintiff and the Deceptive Practices Subclass have been injured as a direct and proximate result of Defendant's violations of the state consumer protection laws recited in this Count.

52. Plaintiff and the Deceptive Practices Subclass have suffered and incurred actual damages as a direct and proximate result of Defendant's violations of the state consumer protection laws recited in this Count.

53. To the extent required to state a claim under any statute listed in this Count, Plaintiff and the Deceptive Practices Subclass reasonably relied on Defendant's misrepresentations, unfair and deceptive statements, material omissions.

54. Defendant's unfair and deceptive acts were knowing, willful and/or reckless.

55. Plaintiff and the Deceptive Practices Subclass seek damages, statutory damages, exemplary damages, punitive damages, an injunction, restitution, disgorgement attorney's fees and costs, and all other appropriate legal and equitable relief and remedies for Defendant's violations of the state consumer protection laws recited in this Count.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHEMNT

56. Plaintiff repeats and realleges each preceding paragraph of the Complaint as if fully set forth herein.

57. Defendant has over-charged and collected tips from Plaintiff and other Class members who reasonably believed the exact tip amount which they entered on the DoorDash app would be paid to the Dasher as a wage enhancement for good service, not to DoorDash, either in

whole or in part, as a subsidy to offset its costs.  Had Plaintiff and other Class members known that the amount received by the Dasher would not be enhanced by the exact amount entered as a tip on the DoorDash app and that all or part of the tip amount they entered on the DoorDash app would be paid to DoorDash and not the Dasher, they never would have agreed to pay a tip on the DoorDash app.

58. As a result, Plaintiff and the Class have conferred a benefit on Defendant.

59. Defendant had knowledge of this benefit and voluntarily accepted and retained the benefit conferred.

60. Defendant will be unjustly enriched if it is allowed to retain the aforementioned benefits, and Plaintiff and each Class member is entitled to recover the amount by which Defendant was unjustly enriched at Plaintiff's and each Class member's expense.

**FOURTH CAUSE OF ACTION**
**FRAUD**

61. Plaintiff repeats and realleges each preceding paragraph of the Complaint as if fully set forth herein.

62. DoorDash made materially false representations and omissions to Plaintiff and the other Class members concerning the tip on the DoorDash app.  At all relevant times Defendant knew, or reasonably should have known, and failed to disclose that the exact tip amount entered by the customer on the DoorDash app was not a customary tip and did not reward the Dasher with the exact tip amount as additional income for good service, but instead was paid, in whole or in part, to DoorDash to offset its labor costs and costs of doing business.

63. Defendant made these false and misleading representations and omissions knowingly, recklessly, and/or without regard for their truth or falsity, and with the intent to induce Plaintiff and other Class members to rely upon them by entering a tip amount on the

15

DoorDash app. Indeed, reasonable consumers were led to believe by Defendant's material misrepresentations and omissions that the full tip amount entered on the DoorDash app would be paid as a wage enhancement to the Dasher for good delivery service, when this was not true.

64. Plaintiff and other Class members justifiably relied upon the false representations and omissions made by Defendant by entering a tip amount on the DoorDash app. Had Plaintiff and the other Class members known that the tip amount they entered on the DoorDash app was not paid in full to the Dasher as a customary tip for good service, but instead was paid, in whole or in part, to DoorDash, Plaintiff and the other Class members as reasonable persons would not have agreed to pay a tip via the DoorDash app.

65. As a direct and proximate result of Plaintiff's and the Class member's reliance upon the false representations and omissions of Defendant, Plaintiff and the Class have suffered damages, including, but not limited to, overpayment for DoorDash services by tipping on the DoorDash app. Because of the willful and wanton conduct of Defendant, Plaintiff and the Class are entitled to punitive, as well as actual, damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. Certifying the Class and Subclasses pursuant to Federal Rule of Civil Procedure 23, certifying Plaintiff as the representative for of the Class and Subclasses, and designating his counsel as counsel for the Class and Subclasses;

B. Actual and compensatory damages for injuries suffered by Plaintiff and the Class and Subclasses;

C. Awarding Plaintiff and the Class and Subclasses statutory and exemplary damages where permitted;

D. Awarding Plaintiff and the Class and Subclasses punitive damages;

E. Reasonable attorney's fees and costs of this action and pre-judgment interest under the state consumer fraud statutes; and

F. Such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff, the Class, and Subclasses demand a trial by jury on all issues so triable

Dated: July 29, 2019
New York, New York

**GISKAN SOLOTAROFF  
& ANDERSON LLP**

/s/ Catherine E. Anderson  
Catherine E. Anderson, Esq.  
Email: canderson@gslawny.com  
Oren Giskan, Esq.  
Email: ogiskan@gslawny.com  
90 Broad Street 10th floor  
New York, NY 10004  
Tel: (212) 847-8315 x 12

**Z Law, LLC**  
Cory L. Zajdel, Esq.  
Email: clz@zlawmaryland.com  
2345 York Road, Suite #B-13  
Timonium, Maryland 21903  
Tel: (443) 213-1977

*Counsel for Plaintiff  
and Proposed Counsel for the Class*