UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
ALAN ARKIN, on behalf of himself and all others similarly situated,

                      Plaintiff(s),

      -against-

DOORDASH, INC.,

                      Defendant(s).
---------------------------------------------------------------

**MEMORANDUM & ORDER**
**19-CV-4357 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Alan Arkin brings this putative class action against DoorDash, Inc. ("DoorDash"). (Compl. (Dkt. 1).) Plaintiff alleges that DoorDash misled him and other customers into believing that workers who delivered food ordered through the DoorDash mobile app would receive tips entered by the customers on the app. Instead, the tips subsidized DoorDash's labor costs. (*Id.* ¶ 1.) Plaintiff brings claims pursuant to New York General Business Law § 349 and similar consumer protection statutes of other states, as well as for common law fraud and unjust enrichment. (*Id.*) Before the court is Defendant's motion to compel arbitration of Plaintiff's claims and to stay this action pending the completion of arbitration. (Def.'s Mot. to Compel Arbitration ("Mot.") (Dkt. 19); Mem. in Supp. of Mot. to Compel Arbitration ("Mem.") (Dkt. 19-1); Mem. in Opp. to Mot. to Compel Arbitration ("Opp.") (Dkt. 19-5); Reply (Dkt. 19-8).) For the reasons stated below, Defendant's motion is GRANTED.

## I. BACKGROUND

### A. Facts

Plaintiff Alan Arkin is a resident of Brooklyn, New York who made approximately 38 purchases through DoorDash's food delivery app over a period spanning June 2015 to February 2019. (Compl. ¶¶ 2-3; Transaction Log (Dkt. 19-4) at ECF p. 250.) The app allows

the customer to submit a tip, and Plaintiff "believe[d] that the tip amount entered on the DoorDash app would be received as a tip by the DoorDash delivery workers for their service." (*Id.* ¶ 1.) However, tips entered on the app subsidized DoorDash's labor costs and were not given to the delivery workers. (*Id.* ¶ 12.) Plaintiff asserts that if he had known this, he "would not have agreed to enter and pay a tip" via the DoorDash app. (*Id.* ¶ 18.) He was made aware of Defendant's policy after the New York Times published an article on the subject on July 21, 2019.[1] (*Id.* ¶ 10.) Three days after the article's publication, DoorDash announced that it would end its "widely criticized" tipping policy. (*Id.* ¶ 15.) Plaintiff seeks damages on behalf of himself and "[a]ll consumers who used DoorDash and paid a tip through the DoorDash app within the statutory period." (*Id.* ¶ 19.)

### B. Arbitration Provisions at Issue

Plaintiff signed up for a DoorDash account on June 30, 2015. (Decl. of Stanley Tang ("Tang Decl.") (Dkt. 19-4) ¶ 5.) In order to complete the sign-up process, Plaintiff entered his name, email address, and phone number. (*Id.* ¶ 6.) Directly above the "Sign Up" button, there was a sentence stating that "[b]y signing up, you agree to our Terms and Conditions Agreement and consent to receive emails, calls and text messages." (*Id.*) The phrase "Terms and Conditions Agreement" included a hyperlink, highlighted in red, to the terms and conditions, which Plaintiff had an opportunity to read before signing up. (*Id.* ¶ 7.) Those terms and conditions contained the following arbitration clause:

> The parties shall first attempt to resolve any dispute related to this Agreement in an amicable manner by mediation with a mutually acceptable mediator.... Any disputes remaining unresolved after mediation shall be settled by binding arbitration

---

[1] *See* Andy Newman, *What Our Reporter Learned Delivering Burritos to New Yorkers*, N.Y. Times (July 21, 2019), https://www.nytimes.com/2019/07/21/reader-center/insider-reporter-food-deliveryman.html.

> conducted in San Francisco, California utilizing a mutually agreed arbitrator or arbitration service.

(Original Terms and Conditions (Dkt. 19-4) at ECF p. 230.)

DoorDash updated its terms and conditions in June 2016. (Tang Decl. ¶ 11.) When DoorDash customers opened the app for the first time after the new terms took effect, they were "shown a pop-up screen notifying them" of the updated terms which stated: "[w]e have updated our Terms and Conditions Agreement ('Terms'). Important changes include an updated arbitration clause that could affect your rights to participate in current or future class action litigation if you do not opt out of the clause as described in the Terms." (*Id.*) The pop-up screen provided a link to the updated terms. In order to continue using the app, a user had to check a box corresponding to the statement "I agree to the updated Terms" and then click a button reading "Accept." (*Id.* ¶ 13) The terms provided, with exceptions inapplicable here, that:

> You agree that any dispute or claim relating in any way to your access or use of the Website or Software, to any products or services sold or distributed through the Software or the Website (including the Services), or to any other aspect of your relationship with [the] Company will be resolved by binding arbitration, rather than in court.

(2016 Terms & Conditions ("2016 T&C") (Dkt. 19-4) at ECF p. 239-40.)

The 2016 T&C also included a class action waiver stating that "[a]ll claims and disputes within the scope of this arbitration agreement must be arbitrated on an individual basis and not on a class basis." (*Id.* at 241.) The 2016 T&C allowed users to opt out of the arbitration agreement within 30 days of becoming subject to it. (*See id.*) The fourth paragraph of the 2016 T&C, in bolded and capitalized text, warned that that the agreement included an arbitration agreement and class action waiver, as well a reference to the user's right

3

to opt out. (*See id.* at 232). Plaintiff did not opt out. (Tang Decl. ¶ 14.)[2]

Finally, the 2016 T&C included a broad delegation provision that stated:

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable.

(2016 T&C at ECF p. 240.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "This policy is founded upon 'a desire to preserve

---

[2] DoorDash updated its Term & Conditions again in 2018 and posted the updated terms on its website. (*See* Tang Decl. ¶ 15). DoorDash alleges that Plaintiff accepted the 2018 T&C by continuing to use the app after the update was posted on its website. It is not clear that Plaintiff's mere continued use of the DoorDash app under these circumstances constituted an agreement to abide by the 2018 T&C. *See Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24-25 (2d Cir. 2010) (finding that a defendant's "initial showing of the existence of an agreement to arbitrate was deficient" where it alleged that "users of [its] website 'accept[ed]' the Terms and Conditions merely by using the website" and "did not allege any facts tending to show that a user would have had actual or constructive knowledge of the Terms and Conditions"). Because Plaintiff accepted the 2016 T&C, which were materially identical to the 2018 T&C, the court declines to decide whether Plaintiff also accepted the 2018 T&C.

parties' ability to agree to arbitrate, rather than litigate, their disputes.'" *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (alteration adopted)). Under Section 4 of the FAA, a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may file a motion to compel, which a court must grant "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 354-55 (2011).

A motion to compel arbitration requires the court to address two issues: (1) whether the parties have entered into a valid agreement to arbitrate, and (2) if so, whether the dispute at issue falls within the scope of the parties' agreement to arbitrate. *See In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *see also Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." (emphasis in original)). The first question—whether the parties have agreed to arbitrate —"is one only a court can answer, since in the absence of any arbitration agreement at all, questions of arbitrability could hardly have been clearly and unmistakably given over to an arbitrator." *VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 325 n.2 (2d Cir. 2013) (quotation marks omitted). In evaluating the second question— whether the scope of the agreement to arbitrate covers the dispute at issue—"courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability.'" *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014). Thus, unless the parties have "clearly and unmistakably" delegated to an arbitrator the authority to resolve issues of arbitrability, *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002), "the question of whether or not a

dispute is arbitrable is [also] one for the court." *Citigroup Global Mkts. Inc. v. Abbar*, 761 F.3d 268, 274 (2d Cir. 2014) (quotation marks and citation omitted). Where courts have the authority to make that determination, the federal policy in favor of arbitration "requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009) (quotation marks and citation omitted).

In deciding a motion to compel arbitration, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). As a result, allegations related to arbitrability are evaluated to determine "whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial." *Schnabel*, 697 F.3d at 113. In addition, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). The court may consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quotation marks and citation omitted) (alteration adopted).

### III. DISCUSSION

The parties do not dispute that the FAA applies, that an agreement to arbitrate exists as per the 2016 T&C,[3] or that the dispute at issue

---

[3] Defendant's exhibit purporting to show that Plaintiff agreed to the 2016 T&C contains a User ID that does not match the User ID affiliated with Plaintiff's account in other exhibits. (*Compare* 2016 T&C Confirmation (Dkt. 19-4) at ECF p. 248 *with* Sign-Up Confirmation (Dkt. 19-4) at ECF p. 223.) Notwithstanding that discrepancy, which casts some doubt on whether this record is from Plaintiff's account or another user's account, all available evidence suggests that Plaintiff agreed to the 2016 T&C. Defendant asserts, and Plaintiff does not dispute, that once users were notified of the 2016 T&C, they could not continue using the app without first checking the box that read "I agree

falls within the scope of the 2016 T&C. Plaintiff's sole argument against Defendant's motion is that the arbitration clause contained therein—which includes a class action waiver—is unconscionable due to the fees he would be required to bear in an arbitration proceeding, and thus it should not be enforced. (*See* Opp. at 5-9.)

Under the FAA, parties can agree to delegate threshold questions of arbitrability to an arbitrator in addition to underlying merits disputes. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). These agreements are to be enforced unless a party specifically contests such a delegation. *See Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 72 (2010).

The Second Circuit has found even broad language regarding the scope of an arbitration agreement to be a clear and unmistakable agreement to delegate questions of enforceability to an arbitrator. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) ("The words 'any and all' are elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration."); *see also NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014). Additionally, courts regularly uphold specific clauses that delegate enforceability issues to an arbitrator if they are not contested. *See, e.g.*, *Vargas v. Bay Terrace Plaza LLC*, 378 F. Supp. 3d 190, 196 (E.D.N.Y. 2019) ("[T]he law is clear that absent a specific challenge, the delegation of the questions of unconscionability and enforceability of an arbitration agreement to an arbitrator must be upheld."); *Kuehn v. Citibank, N.A.*, No. 12-CV-3287 (DLC), 2012 WL 6057941, at *3 (S.D.N.Y. Dec. 6, 2012) ("[I]n light of a delegation agreement, a party's challenge to the arbitration agreement on unconscionability grounds is a dispute that must be resolved by arbitration unless the party

---

to the updated Terms" and then clicking the button that read "Accept." (Tang Decl. ¶ 13.) The parties agree that Plaintiff placed orders using the app subsequent to June 2016, when users were notified of the 2016 T&C, and a record of Plaintiff's transaction history supports that understanding of the facts. (*See* Transaction Log at ECF p. 250.) It is therefore clear that Plaintiff agreed to the 2016 T&C, and Plaintiff does not argue otherwise.

opposing arbitration demonstrates that the delegation agreement itself is unenforceable.").

Here, the court may not reach Plaintiff's unconscionability argument because the parties have clearly and unmistakably agreed to delegate issues of enforceability of the arbitration agreement to the arbitrator. The 2016 T&C broadly describes the scope of the arbitration. The agreement provides that "any dispute or claim relating . . . to any products or services sold or distributed through the Software or the Website (including the Services), or to any other aspect of your relationship with [the] Company will be resolved by binding arbitration, rather than in court." (2016 T&C at ECF p. 232.) That language—requiring arbitration of disputes related to any aspect of the relationship between the parties, which includes the agreement to arbitrate itself—is sufficient to delegate questions of arbitrability to the arbitrator. *See NASDAQ OMX Grp.*, 770 F.3d at 1031. Even if it were not, the 2016 T&C also includes an explicit delegation clause: "The arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement." (2016 T&C at ECF p. 240.) Plaintiff argues only that the fees he will have to pay under the arbitration agreement render the entire agreement unconscionable; he makes no mention of the delegation clause. (Opp. at 5-9.) However, because unconscionability is a question of enforceability, the court may not contravene the expressed intent of the parties to delegate questions of enforceability to the arbitrator. *See Vargas*, 378 F. Supp. 3d at 196.

Defendant requests that this proceeding be stayed pending the outcome of arbitration. The FAA provides that a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 534 (E.D.N.Y. 2016). Because all of Plaintiff's claims are arbitrable, the court stays the entire action pending the result of arbitration.

8

### IV. CONCLUSION

For the reasons stated above, Defendant's (Dkt. 19) motion to compel arbitration is GRANTED and the case is STAYED pursuant to 9 U.S.C. § 3.

SO ORDERED.

Dated:   Brooklyn, New York
         August 24, 2024

                                                  /s/ Nicholas G. Garaufis
                                                 NICHOLAS G. GARAUFIS
                                                 United States District Judge